Elliott et al. vs. Pearce                [October

## ELLIOTT ET AL. VS. PEARCE.

A deed for the land of the wife, executed by the husband and wife, but not acknowledged by the wife, is of no validity as to her; and conveys only the use of the land during the coverture, etc.

A deed acknowledged before a justice of the peace of a sister state, who was not, at the time, authorized by law to take the acknowledgment of deeds for lands in this State, and recorded prior to the act of 5th January, 1843, (*Gould's Dig.*, ch. 37 sec. 32,) is to be regarded as a duly recorded deed from the date of that act.

Where a deed purports, on its face, to be executed by an attorney in fact, and the execution of the deed is put in issue, the power under which it was executed must be produced.

Though a tax sale of land be irregular and invalid, the collector's deed in connection with proof of the actual possession of the land by the purchaser, and those claiming under him, during the whole period of limitation, is sufficient to entitle him to have his possession protected, and his title quieted.

*Appeal from Phillips Circuit Court in Chancery.*

Hon. GEORGE W. BEAZLEY, Circuit Judge.

S. H. HEMPSTEAD, for the appellant, contended that the Circuit Court erred in striking out the demurrer of the complain-

ant to the cross-bill; in refusing an extension of time to answer the cross-bill; and in refusing to permit the answer to be filed when presented.

That although a tax-sale may be void, a person claiming under it is entitled to compensation for improvements. *Blackwell on Tax Titles*, 688 *to* 696, *note* 4, *p*. 691.

The title of Elliott was good by possession and limitation, under the act of 3d March, 1838. (*Dig.*, *ch*. 99, *sec*. 6.) This is a statute of repose, which ought to be liberally extended to suppress the mischief, and advance the remedy. The mischief was, that persons holding under tax sales were dispossessed after a long lapse of time, in consequence of infirmities and irregularities in the sale, or in the tax deed. The remedy to be applied was that although invalid, yet tax deeds should be sufficient to protect a possession after the lapse of five years. Statutes of limitation would be of little use if they protected those only who could otherwise show an indefeasible title to the land.

The case of *Roberts vs. Pillow, Hempstead's C. C. R.* 625; *S. C.* 13 *How. S. C. Rep.* 472, is precisely in point, and must be decisive of this case. The deeds in both cases were made by the same collector, in the same year, and to an assignee, and were acknowledged and recorded according to law. " These deeds," says the Court in the above case, " come within the description of the 96th section. (*Dig.* 888.) They are made by a collector of the revenue; they are acknowledged and recorded according to law; they purport to be for land assessed for taxes, and regularly sold according to law, and the law enacts that deeds so made shall be evidence, not only of the grant by the collector, but of the regularity and legality of the sale of the land described therein." *Hempstead's Rep.* 640, 641.

Even irregular and worthless deeds, and those which are void, are admissible to prove that the person in possession claims for himself, and of course adversely to all the world. *Ib.*

In *Green vs. Neal*, 6 *Peters*, 295, it was held on the authority of the decisions of the court of Tennessee, that if a person

proves an adverse possession under a deed, and shows that the land has been granted, he brings himself within the statute of seven years, and is entitled to its benefit. See also, *Reeder vs. Darby's· Lessee, Martin & Yerg.* 396.

Though the possessor claims under written evidence of title, which proves to be defective, yet such defects are of no consequence, and will not deprive him of the benefit of the statute of limitations. *Angell*, 435; 8 *Cow* 589.

In *Love vs. Shields*, 3 *Yerg*. 405, the court, speaking through CATRON, C. J., held that a tax sale void because of the informality of the proceedings, was sufficient to protect a possession as being color of title, so as to make possession available under the statute of limitations; and moreover, that the possessor could not be deprived of the benefit of the statute, because of his knowledge at the time of receiving the deed, that the grantor had no title.

In the case under consideration, the tax deed recites all that is necessary to make a good tax title. And by express law the deed vested in Elliott, his heirs and assigns, a good and valid title both in law and equity, to the land in controversy. It became evidence in all courts of the State, and also evidence of the regularity and legality of the sale of the land. And no exception shall be taken to it, except such as shall apply to the real merits of the case. *Digest*, 889. It is good on its face, and no showing has been made against it. *Hogins vs. Brashears*, 13 *Ark*. 202; *Merrick vs. Hutt*, 15 *Ark*. 331.

FOWLER & STILLWELL, and CUMMINS & GARLAND, for appellee.

*Elliott*, being *in possession* under a covinous contract with *McPherson* in 1837, and *in* 1838, at the time it was *assessed* and *taxed* and *sold*, and *claiming it then as his own*, was *himself* bound in law, and in equity, to *pay the taxes;* and if he did *not*, and suffered it to be sold, neither *he* or *McPherson* acquired any strength to their title thereby, but stood *precisely* as they did before—*in statu quo*. The purchase by *McPherson*, and his *transfer* to *Elliott*, merely operated *as a payment of the taxes*,

*and nothing more.* See 11 *Ill. Rep.* 383, *Frye vs. Bank of Ill.;* 13 *Ib.* 476, *Ralston vs. Hughes; Baldw. C. C. Rep.* 162, *Burr vs. McEwen;* 13 *Ill. Rep.* 714, *Blakely vs. Bestor;* 12 *Ark. Rep.* 583, *Whiting & Slark vs. Beebe;* 12 *Ill. Rep.* 444, 445, *Voris vs. Thomas;* 10 *Ohio Rep.* 156, *Douglass vs. Dangerfield; Wright's Ohio Rep.* 273, *Piatt vs. St. Clair's heirs;* 11 *Ill. Rep.* 322, *Choteau vs. Jones et al.*

There is no acknowledgment of the deed to Elliott by Mrs. Putnam, as required by the statute; and *without* such an acknowledgment, in substantial conformity with the statute, the deed of a *feme covert* is a *mere nullity—absolutely void.* 1 *Hill (N. Y.) Rep.* 125, *Gillett vs. Stanley;* 1 *Monr. Rep.* 49, *Steele vs. Lewis, etc.;* 11 *Ill. Rep.* 386, *Blaine vs. Harrison;* ————— 130, *et seq., Hughs vs. Lane;* 1 *Hill (So. Car.) Rep.* 110, *Hillegas vs. Hartley;* 1 *Pet. Dep.* 338, *Elliott vs. Piersol;* 5 *Mason C. C. Rep.* 67, *Manchester vs. Hough;* 3 *A. K. Mars. Rep.* 13, *Phillips vs. Green;* 16 *Johns. Rep.* 114, *Jackson vs. Stevens;* 20 ————————— 364, *Jackson vs. Cairns.*

The *certificate* of her acknowledgment, as required by the statute, is an *indispensable* part of her deed, and no title as to her can pass without it. See 12 *Ill. Rep.* 276, *Mason vs. Brock.*

And, when she makes the acknowledgment, the deed only takes effect from *that time,* and does not relate back to the date of the deed, for, *until* so acknowledged, the deed is a *mere nullity.* 16 *Johns. Rep.* 113, 114; 20 *Johns. Rep.* 304.

Even the possessory title of *Putnam,* the *husband,* could be of no service to *Elliott,* because, although he took depositions as to other matters, he never *proved the execution of the deed by him,* under the original bill, which was *indispensable* to the *maintainance of the right set up.*

For the supposed acknowledgment by *Putnam,* before a *justice of the peace,* in *New Hampshire*—at that time—October, 1836, a *justice of the peace in any other State,* had *no authority* to take the *acknowledgment* of deeds to land *in Arkansas.* 12 *Sm. & Mar. Rep.* 266; *Steele & McCamp. Dig p.* 133, *sec.* 6.

The deed, purporting to have been executed by Mr. Wood-ruff, as attorney in fact for Sylvester, to Elliott, confers *no title whatever*, even were it true that Sylvester had any title; because Mr. *Woodruff's authority* is not shown or *produced*, which is *absolutely* necessary, in order to *pass title. The deed is void.* See 2 *A. K. Marsh. Rep.* 240, *Pope vs. Melone*; 2 *Dev.* (*Law Rep.*) 98, *Delius vs. Cawthorn*; 14 *Serg. & Rawle Rep.* 331, *Gordon vs. Bulkely*; *Co. Lit.* 48 *b.*; 1 *Bac. Abr.* 198, 199.

And there is no foundation for any statute of limitations to rest upon at all. For, the *tax-deed* being void *upon its face*, and *illegally* obtained, it can afford no defence under the *five years* statute of limitations, as we have shown in our brief of *Cofer vs. Brooks*. Mrs. *Putnam* also being a *feme covert*, was protected fully by the *proviso* of the statutes; and as soon as she conveyed to Pearce, the litigation commenced.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 2d of May, 1853, Caleb Elliott filed a bill in the Circuit Court of Phillips county, against Thomas Pearce, Ephraim Putnam, and his wife Prudence, to quiet title, etc., to the southwest quarter of section 29, township one north, range four east, etc.

At the return term, (*Nov.* 1853,) a decree *pro confesso*, was taken against Putnam and wife; Pearce answered the bill, making his answer a cross-bill; Elliott filed a replication to the answer, and entered his appearance to the cross-bill, under an agreement that he should not answer it until the next term.

At the May term, 1854, Elliott filed successively a plea in abatement, and a demurrer to the cross-bill, which were stricken out, his solicitor was refused further time to prepare and file an answer, and an order made that the cross-bill be taken as confessed.

The cause was finally heard upon the original bill, answer, replication, depositions, and the cross-bill as confessed; and the court dismissed the original bill, for want of equity, and decreed the land in controversy to Pearce upon the cross-bill. Elliott

appealed, afterwards died, and his administrator and heirs were substituted as appellants here.

Finding that the case may be finally disposed of upon the merits, it is deemed of no importance to decide the preliminary questions of pleading and practice, which arose in the progress of the cause in the court below, and which have been discussed by the counsel of the parties here.

In the original bill, the title of Elliott is made out as follows:

On the 18th of January, 1831, the land was patented to Prudence Putnam.

On the 14th of October, 1836, she and her husband sold and conveyed the land to Sylvester.

On the 13th October, 1851, Sylvester conveyed it to Elliott.

On the 27th of December, 1837, one McPherson, representing himself as having the right to sell the land, sold it to Elliott, gave him a bond for title, and delivered the possession of the land to him, etc.

On the 5th of November, 1838, the land was sold for taxes assessed upon it, in the name of Prudence Putnam, for the years 1834–5–6–7–8, inclusive, purchased by McPherson, who obtained the collector's certificate of purchase, transferred it to Elliott, and on the 10th of October, 1844, the collector made him a tax deed for the land.

From the time Elliott purchased from McPherson, in December, 1837, until the filing of the bill, he was in the actual, continuous, adverse possession of the land, cultivating, improving and living upon it, claiming it as his own, etc., his title papers being upon the public records, etc.

On the 9th of March, 1852, Pearce having discovered that the deed from Putnam and wife to Sylvester, was defectively acknowledged, applied to them and purchased the land, in fraud of Elliott's rights, for a nominal price, obtained their quit claim deed therefor, and had instituted an action against Elliott to recover possession of the land, etc.

The answer of Pearce impeaches the validity of the title papers of Elliott, asserts the superiority of his own purchase from

Putnam and wife; and, as a matter of pleading merely, and not for discovery, the answer is made a cross-bill for the purpose of obtaining a decree against Elliott, for possession of the land, etc., etc.

1. The certificate of acknowledgment appended to the deed from Putnam and wife to Sylvester, as it is copied in the transcript before us, is as follows:

" STATE OF NEW HAMPSHIRE, }
          SULLIVAN ————,        }  ss.

Ephraim Putnam and ————————, personally appeared and acknowledged the foregoing instrument to be their voluntary act and deed, before me.

J. J. GILCHRIST,

*Justice of the Peace.*"

The certificate bears no date. The deed is dated the 14th of October, 1836, and the subscribing witnesses attest the signatures of Putnam and wife, as of the same date. The deed, with the certificate attached, was filed for registration in the office of the Recorder of Phillips county, 8th July, 1837; and the certificate must, therefore, have been made at some time between the date of the deed and its registration.

It does not appear from the certificate that Mrs. Putnam acknowledged the execution of the deed at all. But if it be supposed that the omission of her name was a clerical misprision, still the certificate as to her amounts to nothing.

By the common law, a married woman could only convey her real estate by a fine or common recovery. She could not convey by deed. *McDaniel vs. Grace, et al.*, 15 *Ark.* 478.

We have been able to find no statute of this State or Territory, enacted prior to 8th July, 1837, prescribing the mode in which a married woman might convey her separate real estate. Under subsequent statutes, she may convey by deed, but the execution of the conveyance, to be valid, must be upon a private examination and acknowledgment. *Ib.*

The deed in question was, therefore, of no validity as to Mrs. Putnam.

The acknowledgment by Putnam, the husband, was also informal, there being, at that time, no statute authorizing a Justice of the Peace, of a sister State, to take and certify an acknowledgment of a deed by a non-resident, to land lying within this State. *Steel & McC. Dig. p.* 133.

But though the deed was recorded upon a defective acknowledgment, by the husband, and the registration thereof was illegal and ineffectual, yet by the act of *the* 5th *of January,* 1843, (*Gould's Dig. chap.* 37, *see.* 32, *p.* 269,) the informality in the acknowledgment was cured, the registration was legalized, and from the date of the curing act the deed could not " *be impeached for not being duly recorded,*" and had " *the same legal force and effect as if it had been duly recorded in the first instance,*" except as to persons acquiring rights prior to the passage of the act. In other words, from the date of the act it is to be regarded as a duly recorded deed from Putnam to Sylvester. *Noakes vs. Martin,* 15 *Ill.* 118; *Raverty et al. vs. Fidge et al.* 3 *McLean R.* 231; *Ib.* 385; *Rainey vs. Gordon,* 6 *Humph.* 357; *Jackson vs. Gilchrist,* 15 *John R.* 109; *Watson et al. vs. Mercer,* 8 *Peters R.* 108; *Smith Com.* 546.

2. The deed from Sylvester to Elliott purports on its face to have been executed and acknowledged by Woodruff, as attorney in fact for Sylvester. The power under which Woodruff executed the deed, does not appear to have been recorded with it, nor was it exhibited with the bill, or produced at the hearing. The answer putting in issue the execution of the deed, the power under which it was executed should have been produced, etc. So that it might be seen whether there was authority for the act done, and also, whether the act was performed in a proper manner. *Tolman vs. Emerson,* 4 *Pick R.* 162; *Cow. & H. notes on Phillips Evidence, part* 2, *p.* 812.

3. There is no showing that McPherson had any title to the land at the time he executed his bond for title to Elliott, or that he afterwards acquired any title other than that purchased by him at the sale of the land for taxes.

4. In the answer of Pearce, several objections are taken to

the validity of the tax sale, and among them it is averred that an illegal and excessive amount of back taxes, penalties, etc., were charged upon the land, etc. Treating these allegations as part of the cross-bill, which was taken as confessed, by the failure of Elliott to answer it, it may be assumed, for the purposes of this case, that the objections made to the regularity of the tax sale are true in fact, and that the sale was illegal and invalid.

The act of 3d March, 1838, provides that, " All actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, and for lands sold at judicial sales, shall be brought within five years after the date of such sale, and not thereafter; saving to minors, and persons of unsound mind, the period of three years after such disability shall have been removed." *Eng. Dig.*, chap. 99, sec. 6.

There is no exception in this statute in favor of married women. It began to run against Putnam and wife, under whom Pearce claims to hold the land, on the 5th of November, 1838, the date of the tax sale, and the five years elapsed on the 5th of November, 1843, and before the passage of the act of the 14th December, 1844, (*Gould's Dig.*, chap. 106, sec. 16,) making a reservation in favor of married women. Pearce purchased the land of Putnam and wife (9th March, 1852,) after the period of limitation expired, and after their right of action was barred, and of course he could not purchase of them a right which they had lost.

It is true that the tax sale was irregular, as conceded above, but it was sufficient, in connection with the actual possession of the land by Elliott during the entire period of limitation, to entitle him to have his possession protected, and his title quieted. *Pillow vs. Roberts*, 7 *Eng.* 829.

The decree of the Court below in favor of Pearce upon the cross-bill, was erroneous, for two reasons:

1st. Before he purchased the land of Putnam and wife, Putnam had conveyed all his interest therein to Sylvester, which

was the use of the land during coverture, etc., and Pearce purchased no title of Mrs. Putnam which he could assert for the purpose of obtaining possession of the land, until after the interest conveyed by the husband terminated. (*Jackson vs. Sears*, 10 *Johns. R.* 441; *Reeve's D. R.* 27, 28.)

2d. Elliott made out a superior title by lapse of time, in connection with his possession and title papers.

It follows that the decree of the Court below must be reversed; and a decree entered here in favor of the appellants, quieting their title to the land in controversy, etc., in accordance with the prayer of the original bill.

*Opinion* of RECTOR, J., expressing his own views.

This was a bill, filed by Caleb Elliott, in the Phillips Circuit Court, May, 1852, against Ephraim and Prudence Putnam and Thomas Pearce.

The complainant sets up, as title to the south-west quarter of section 29, township one north, range four east, a bond, executed to him 27th December, 1837, by one Wm. M. McPherson—a sale of the land to McPherson for taxes, Nov. 1838, by the sheriff of Phillips county, a sale of the land by Ephraim and Prudence Putnam, in 1836, to Henry H. Sylvester, and purchase by him from Sylvester, in 1851. That he took possession in 1837, under McPherson, has had it ever since, and has made lasting and valuable improvements, and put some of the land in cultivation. He alleges that on the 9th of March, 1852, Ephraim and Prudence Putnam sold the land again to the defendant, Pearce,—that Pearce knew of his title from them, through Sylvester, and that Pearce's purchase was fraudulent, etc. He prays special relief, that Pearce's deed be canceled, and that he be injoined from setting up his title, etc.; that the defendant, Pearce, has already commenced suit in ejectment against him, etc., etc.

Pearce answered the bill—says: he has dismissed the suit in ejectment, admits the pretended transfers, and bond, to the complainant for the land—admits complainant's possession—

the sale of the land for taxes—his deed and purchase from the Putnams. But he denies the validity of any of said evidences of title to Elliott—denies the validity of the tax sale by the sheriff of Phillips county—charges that the bond from Mc-Pherson to complainant was a device to defraud the proper owners—and that McPherson and complainant stood, to the rightful owners, the Putnams, in the light of tenants in possession, and were bound to pay the taxes on the land, and could not, for that reason, purchase it. He makes his answer a cross-bill, and avers his purchase from Ephraim and Prudence, made in 1852, to be the superior title in law and equity.

Publication was had against defendants Ephraim and Prudence, and at the November term, 1853, a decree *pro confesso* entered as to them.

Complainant filed his general replication—waived service as to cross-bill, upon terms—to answer by the next term of the Court. And, at said succeeding term, May, 1854, the appellant, Elliott, filed a plea in abatement to the cross-bill, alleging the non-residence of Pearce, and that he, nor any one for him, had filed a bond for costs in the cross suit; which, upon motion, was stricken out, and appellant excepted.

The appellant then filed a demurrer to the cross-bill:

1st. For want of equity.

2d. Because appellee was not entitled to an answer to his cross-bill, until he should affix interrogatories, directing appellant to what part of his said answer, he designed as cross-matter.

Which was also stricken out by the Court, and appellant excepted.

Thomas B. Hanly, solicitor for Elliott, then presented his affidavit, and moved the Court for further time for appellant to file his answer to the cross-bill of appellee, and in which affidavit he stated, that sometime in the preceding month of January, by appointment, appellant, living some fifteen miles in the country, came into Helena, for the purpose of having his answer prepared, etc. That affiant then appointed the week interven-

ing between the Crittenden Circuit Court and the meeting of that Court, to prepare said answer—that appellant came in accordingly, etc. But that he, Hanly, was unexpectedly engaged in the trial of the Martha Washington case, and could not attend to the matter. That it was then deferred until the Monday following. But that appellant did not reach town until Tuesday, and until after the calling of Court, and that then affiant was actively engaged in business in Court until Wednesday following, when appellant left town, saying he would return the Monday following. But that appellant had not returned—he presumed, was providentially prevented—had a meritorious defence—would be irretrievably injured if cross-bill was taken as confessed, and was willing to submit to any terms imposed by the Court.

But the Court overruled the motion, ordered the cross-bill to be taken as confessed—and appellant again excepted, etc.

The cause was then continued, without further action, until the next term of the Court, at which Hanly and Alexander, solicitors, presented a petition to the Court, supported by the affidavit of the appellant, corroborating the statement previously made by Hanly, for permission then to file an answer, accompanied by the answer itself. But the Court refused the application, and appellant excepted.

The cause then appears to have been continued from term to term without objection, until November term, 1856, when, upon the original bill, answer, cross-bill, exhibits and proof, the cause was heard, and the original bill of appellant was dismissed for want of equity—the title to the land, upon the cross-bill, decreed in Pearce, the appellee, and Elliott excepted, and appealed to this Court.

The facts appear to be, that Prudence Putnam, one of the defendants herein, a citizen of the State of New Hampshire, was the owner, in her own right, by patent from the United States, of date 8th January, 1831, of the land in controversy, being a military bounty, and containing 160 acres, situate in Phillips county, in this State.

That on the 14th day of October, 1836, she and her husband, Ephraim, in consideration of $100, executed a quit-claim deed to Henry H. Sylvester; which deed was witnessed as to both of the grantors, was acknowledged, as to Ephraim Putnam, by a magistrate of said State, but was not acknowledged, in any way, as to the said grantor, Prudence, and that, in 1837, said deed was recorded by the Recorder of Phillips county, etc. And, on the 10th of October, 1841, Sylvester, by his attorney, Woodruff, conveyed the said land to appellant, in consideration of $200, etc.

That, on the 27th day of December, 1837, Wm. McPherson, then resident of the county of Phillips, assuming to have the right to sell said land, executed a title bond, in the penal sum of $1,000, with covenants to convey said tract of land to appellant; and Elliott, appellant, paid him $300 down in full payment therefor. Possession was given appellant by Mc-Pherson, and he made lasting improvements, amounting to several thousand dollars.

Appellant's possession has continued ever since, and adverse to all others.

On the 5th November, 1838, Miller Irvin, sheriff of Phillips county, having assessed and advertised the said tract, in the name of Prudence Putnam, sold the said land for the taxes assessed thereon by him, for the years 1834, '5, '6, '7 and '8, and amounting to $15 40, to the said Wm. McPherson, who assigned his certificate of purchase to appellant, and, on the 10th of October, 1844, executed a deed therefor to appellant.

On the ninth day of March, 1852, Pearce, the appellee, in consideration of ninety dollars, purchased by quit claim deed from Prudence and Ephraim Putnam, wherein the said Prudence acknowledged, separate and apart from her husband, that she had executed the same, free from compulsion, etc., as the Statute of Arkansas prescribes shall be done by a feme covert owning land in her own right.

The first ground of error, assigned by the appellant, is, that

the Court below struck out the plea in abatement, and his demurrer.

The plea shows that the appellee, Pearce, had filed no bond for costs, upon the exhibition of his cross-bill. *Sec.* 1, *chap.* 40, *Gould's Dig.*, provides, that in all suits, where the person, for whose benefit an action is about to be brought, shall file the obligation of some resident, for the payment of such costs as may accrue in the action. *Sec.* 2d, provides that if any suit shall be commenced without filing such obligation, the Court, upon motion, shall dismiss the case.

In the first place, it must be recollected that the appellee, Pearce, did not commence the action. But by the bill of the appellant was driven to cross-matter for defence.

Secondly. The appellant, upon his own motion, had submitted to answer, and waived any objection as to costs. *Kittlewell vs. Scull*, 3 *Ark.* 474.

The second ground of error is, that appellant's demurrer was stricken out by the Court.

Appellant having elected to answer only, was bound to do so. A demurrer would not satisfy the rule. *Cooper Eq. Pl.* 114, 232, 115; 2 *Bro. Ch. Rep.* 214, *Kersick vs. Clayton*.

And, by his submission to answer, he waived any formal objections to the cross-bill, on the ground that no interrogatories were appended.

A complainant need make only such use of the defendant for discovery as he thinks proper. He may call upon him to answer, with interrogatories or without them, or may decline to catechise him at all. *Sec.* 32, *chap.* 28, *Gould's Dig.*, provides that defendant may introduce new matter, and may exhibit interrogatories. Thus giving him like advantages with the complainant. But this is not imperative, but purely discretionary.

He need not make a witness of his adversary, unless he desires it. And, in many cases it is not done; prudence prevents it, and the defendant is debarred the privilege of making testimony in the case.

33

So, on neither reason nor authority can I discover the propriety of exacting interrogatories in an original or cross-bill.

But it is contended by counsel that the demurrer, denying the equity of the cross-bill, ought, upon that ground, to have been sustained. This is getting back to the main question.

And the Court below, sustaining the equity set up in the cross-bill, could not, upon that ground, have sustained the demurrer.

The cross-bill was filed, and charged fraud, and if retained at all by the Court, was not demurrable, but must, by the rules of pleading, be answered. *Ark. Dig., p.* 229, *sec.* 27; 14 *S. & Mar. Rep.* 204, *Neylans vs. Burge*; *Free. Ch. Rep.* 206, *Anderson vs. Lewis*; *Eq. Draftsman* 384.

I think, then, that the demurrer might well have been overruled, if not stricken out.

And where there is any irregularity in the filing of a plea in chancery, it may be taken from the files. 2 *Danl. Pl. & Pr.* 918.

The third, and perhaps more important point, assigned by appellant for error, is the refusal of the Chancellor below to permit the applicant to file his answer to the cross-bill.

As a matter of practice, answers ought to be encouraged, and not persistently suppressed, in the absence of material injury to the adverse party.

And though by laches a party may submit himself to exemplary terms, yet under circumstances similar to those surrounding the appellant in this case, from which it is manifest that neither contempt nor delay was intended, but occurred in some measure by providential interposition, I cannot hold it less than a rigid enforcement of a rule, if not an abuse of discretion, to refuse the answer.

There was no contempt offered, for the parties disclaimed that, and proposed a submission of any terms whatever.

There would have been no consequent delay, surprise nor injury, as the cause, by consent, was continued from term to term, until January, 1856, before the final hearing. The filing

of the answer would have neither retarded nor withheld jus-tice, and if not, it ought to have been received and made part of the case.

And having thus far disposed of the points of pleading aris-ing in the cause, I proceed now to examine the title: and first take up that of Elliott, the appellant.

On the 27th of December, 1837, the land in controversy be-ing unimproved, McPherson, then a resident of Phillips county, assuming to have the right to do so, did, by his bond of that date, and in consideration of three hundred dollars, contract to sell the said land to the appellant, and was to sell by deed in fee, to be executed by the following year. But this contract was never complied with by McPherson, for he had, neither when he executed the bond, nor when he agreed to make the deed, any semblance of right to the property himself. And this he and appellant both knew, it must be presumed. This transac-tion then, neither invested title, nor color of title in the appel-lant.

For it was not an instrument purporting to convey title. But an agreement by which title was to be subsequently ob-tained. And the possession given by McPherson to the appel-lant, was a mere tortious act, a trespass, for which they were both liable to the proper owner.

It was in violation of law, and without authority of law, from any one. And such acts cannot be construed into a ten-ancy or trust, without the subsequent assent of the proprietor, either express or implied.

There was no express authority from the owners, nor could their assent be implied. They were non-residents, and with-out notice.

There is no pretence or proof to that effect.

The next paper in the series set up by the appellant, as title, is the deed executed by the sheriff of Phillips county, Irvin, to him in 1844.

And first, does this amount to title?

The land in question is a military bounty tract, patented to Prudence Putnam, January 18, 1831.

The sale made by the sheriff was for the taxes of 1834, 5, 6, 7 and 8.

But military bounty lands are exempt from taxation, by authority of Congress, for the term of three years from the emanation of the patent. See *original law of the Territory of Arkansas, March 2d,* 1819; *Steel & McC. Digest, p.* 40., *sec.* 11; 1*st Instructions & Ops., p.* 311, *ch.* 228, *sec.* 11.

Consequently the tax levied by the sheriff for the year 1834, was without authority of law.

And, as a further consequence, the sale made in virtue of that levy was invalid also. Under the Territorial statute for the assessment and taxation of property, the 1*st day of January* in each year was the *test day. Steel & McC. Digest, p.* 466, *sec.* 16. And on the 1st day of January, 1834, the three years not having elapsed, this bounty to Mrs. Putnam could not be taxed, nor until January, 1835.

Again: The sheriff in this case derived his authority, and acted in virtue of state regulations, as we must presume, in assessing and selling the land in question for taxes.

The State law prescribed an ad valorem tax, and he so assessed the land for the back years of 1834, 1835 and 1836. The Territorial law prescribed a specific one. This, again, I think, the sheriff had no authority to do. Because, clearly, if the unpaid Territorial tax could be collected by the State at all, such amounts could only be collected as the lands were charged with under Territorial legislation—which was $1 to the hundred acres.

These are not merely irregularities or defects that might be cured by presumption or proof. But there is a fundamental want of power to perform the act, on the part of the officer.

In the case of *Patrick vs. Scott,* this Court (in the opinion of SCOTT, Justice,) say, that " such a power as that defined for the collector of taxes, by the current of authority, lives only in the authoritative acts prescribed to be done by him—the power to

do the succeeding act arises from his having authoritatively done the preceding one.

The deed from the collector, therefore, containing recitals of facts which show that he acted beyond the scope of his authority, as title, I think, would be inadmissible and void.

But although void, yet it is for some purposes, color of title, and is good for possession.

It is evidence that a sale of land was made by the collector, for the unpaid taxes.

And if under such a sale, whether void, regular or irregular, the purchaser, or his heirs or assigns, takes possession of the land, and the original owner is driven to the necessity of bringing an action for it, he is estopped and must go out of Court, if limitation is plead in bar, and it is shown that five years have elapsed since the sale for taxes, and before the institution of the suit.

The 35*th section Digest* provides, that " all actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, shall be brought within five years after the date of such sales, and not thereafter.

This language is too plain to admit of doubt. It is without qualification, and applies to all sales, whether regular, irregular or void.

With the justice or policy of the law this Court has nothing to do. Its duty is to expound the statutes, and give them that effect which, to our minds, seems to have been intended by the Legislature.

And the view taken of the tax sale by the collector, is fully corroborated by the Supreme Court of the United States in the case of *Pillow vs. Roberts*, 13 *How., p.* 477.

But it has been contended by counsel for the appellee, that appellant was affected with a trust to the Putnams, and therefore, in equity, he could not take the land under the tax sale. If there was any evidence of a confidence or trust presented in the record, that point might be attended with some difficulty.

But I have not been able to discover anything of this kind in the case, and must hold that ground insufficient to retain the cross-bill and enter a decree against the appellant.

The deed from the Putnams to Sylvester passed no title certainly.

She owned in her own right, was a feme covert, and without acknowledgment as the statute prescribes, the deed was a nullity, and so this Court held in the case of *McDaniel vs. Grace*, 15 *Ark.* 465, where the question is fully examined and settled.

Sylvester having no title himself could convey none to the appellant.

It follows, then, that the Court below erred in dismissing appellant, and decreeing title in Pearce, the appellee. For admitting his title to be perfect, he could have no standing in court, when he filed his cross-bill November, 1854, fifteen years having intervened since the sale of the land for taxes.