CUNNINGHAM ET AL. VS. BRUMBACK ET AL.

Where the adverse possession of land has been held for more than the period of limitation, the fact that there has been a protracted litigation in respect to it— the adverse party having the equitable title, and a third person the legal title—does not remove the bar of the statute, or prevent the statute from running until the legal is joined with the equitable title.

Where some member of the same family has remained in .possession of land, claiming title, though others have left—as where the father having left, the mother and son remain—the continuity of possession is not broken, so as to stop the running of the statute of limitation, or form a new point for its commencement.

## *Appeal from Pulaski Chancery Court.*

Hon. URIAH M. ROSE, Chancellor.

GARLAND, for the appellants.

The main defence relied on is the statute of limitations, and upon this point the case was decided by the Chancellor. It is proved beyond any question, that all the time Brumback, or those before him, held any of the lands or lots, there was pending in the courts here litigation about them. Appellees holding thus, acquired no title whatever, and their possession could never make them a title. There is no basis upon which the limitation can rest. All persons were bound to take notice of this litigation. *Meux vs. Anthony*, 6 *Eng.* 411, There is no proof in the cause of any sufficient possession to ripen into title, from the date of the final decree in April, 1855, when the title was settled in Cunningham's heirs. Of course until a title was settled or fixed out of the United States, it is not to be contended that the holder or possessor could insist on limitation. *Angell on Lim.* 34, 41. Appellees do not pretend to

have any title beyond that given by limitation, only Fowler's representatives; but Brumback, Fowler's vendor, had no other himself.

JORDAN, WILLIAMS and STILLWELL & WOODRUFF, for appellees.

The objection that the pendency of the suit of Cunningham vs. Ashley & Beebe (the legal title being in them) created such a disability to sue, as in equity ought to prevent the statute from running until that suit was determined, is not well taken. We have no statute of limitation making any such exception, and where the legislature fails to make any such exception, the courts can make none. 13 *Ark.* 292; 16 *Ib.* 696; 17 *Ib.* 199.

It is contended by appellants that, inasmuch as it is shown that appellees were in possession of the lots during the pendency of the suit against Ashley and Beebe, they were bound to take notice of that suit—that they were virtually parties to it, and were bound by the decree therein rendered. The establishment of such a principle or precedent would be ruinous to landholders. We take the law to be well settled that a decree or judgment neither binds nor protects, or in any manner affects the rights of those who are not parties or privies to it. 1. *Bailey Eq.* 159; 7 *Leigh.* 224; 1 *Brock.* 126; 1 *Paige* 35.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

We have examined this case and affirm the decree rendered by the Chancery Court. We approve of the opinion of the Chancellor, and direct it to be published in the Reports as expressing the views of this court:

## CHANCELLOR'S OPINION.

The view that I have taken of this case renders it of little importance to decide the demurrer which questions the right of the plaintiffs to come into equity for relief. But because the plaintiffs seek to enforce a decree, and because in some other respects they might not be able to obtain an adequate remedy

at law, I think that the bill on its face is sufficient, and I shall overrule the demurrer.

In the examination of the facts I am struck, at the first, with the length of time that the defendants have severally and successively occupied the lands in question. We hear of Mrs. Brumback being in possession of them, as early as the year 1827, and continually and persistently have the Brumbacks remained in possession up to the present time. They have also made improvements upon it; and although they do not appear to be costly or extensive, yet no doubt they are such as their estate would permit. The conveyance to Fowler must have given him, as to the lot that he purchased, the same right that was held by his vendor.

The statute of limitations is made to cut off stale claims. The law wisely holds that there shall come a time when even the wrongful possessor shall have peace; and that it is better that ancient wrongs should go unredressed, than that ancient strife should be renewed. The statute of limitations is adopted in equity, so far as the same is applicable; and it runs against mere equitable demands; except in certain cases of fraud and trust, which are foreign to the enquiry in this court. *Ewell vs. Tidwell*, 20 *Ark*. 136.

I do not think that the Brumbacks can be considered as affected by the suit between Cunningham and Ashley. It is a familiar principle that decrees only affect parties and privies. They were not parties to that suit, nor do they claim under any of the parties; but on the contrary, we find them in possession more than ten years before the patent issued to Beebe, and ever since that time they have been claiming against the world, and having maintained their possession for so long a time, if they are now to be ejected, it must be by force of some rigid rule of law, or the sway of some strong and superior equity.

It is contended for the plaintiffs that the pendency of the suit between Cunningham and Ashley & Beebe, and the outstanding legal title in them during a protracted litigation, amounted to such a disability to sue as ought in equity to pre-

vent the statute from running against them; and in support of this position I am referred to the case of *Burnett vs. Colby*, 5 *Simons* 181, and other cases based on the same facts of this, for it is based on the relation of tenant for life and remainderman. During the estate of the tenant for life, the remainderman has no present right, either legal or equitable, to the possession; and if the tenant for life see fit to let a third person remain on the land, the remainderman can have no remedy either in law or equity until the life estate has expired; and this for the simple reason that until that time he is not injured, and consequently can have no redress. And I apprehend that nothing more than this is stated in the 370th to 374th section of Angell on Limitation.

But such was not the case between the Brumbacks and Cunningham, for if the land rightfully belonged to Cunningham, and he had equitably the right to the possession, the act of the Brumbacks in remaining upon the land was an injury for which there must somewhere have been means of redress.

It is true that the outstanding legal title was in Beebe and Ashley, and that Cunningham could not have maintained an ejectment; but that is nothing more than to say that his right to relief lay in equity, and not at law. It was not necessary for Cunningham to prosecute a suit against Beebe and Ashley, and thus obtain from them the legal title before he could come into equity for relief against the defendants in this suit. In this court the mere legal title is of no avail when set up against the equitable estate, but is made subordinate and subservient to it, and if a suit had been brought in equity against the Brumbacks, they could not have defended it by saying that the plaintiff did not have the legal title: or if they had claimed under the holders of the legal title they could not have a better right than was in the patentee himself: nor could the simple fact that the plaintiffs have acquired the legal title cause them to be more favorably regarded than they would have been with their superior equity over the holders of the legal title, and no reason is seen why the Brumbacks might not have been em-

340 CASES IN THE SUPREME COURT

Cunningham et al. vs. Brumback et al. [JANUARY]

braced in the same suit wherein Cunningham asserted his right against Ashley and Beebe.

Nor do I think that the position of the plaintiffs, that there has not been sufficient continuity of possession by the defendants, is well taken.

The principal authority relied on in support of this principle is from *Angell on Limitations* 413, where it is said: if one merely enters and commits a trespass, and then goes off, and another comes after him and commits a trespass, it is not to be denied that there is no privity between these persons, nor can the possession be said to be continued from one to another. This has express reference to cases where the land has been totally abandoned by the trespasser, where there has been a distinct interval between the going off of one trespasser and the coming of another, during which interval, for want of an occupant, the seizin is restored to the true owner. In such case, of course, the entry of the next trespasser is a new wrong, and is a new disseizin. But in this case the circumstances are very different. Christian Brumback, sr., and Mrs. Brumback were originally in possession: when Christian Brumback, sr., removed, he left Mrs. Brumback and her son in possession, and when Mrs. Brumback left, her son still remained: and so the continuity of the adverse possession has never been for one moment broken. Christian Brumback, jr., who was born on the land, is now in the prime of life, and has always resided on the land up to this day. Under these circumstances, it cannot be said that the statute bar does not attach because there has been no continuity of adverse possession. *Fanning vs. Wilcox,* 3 *Day* 258; *McCoy vs. Dickinson College,* 5 *Serg. & Rawle* 254; *Shannon vs. Kinney,* 1 *Marsh.* 4; *Herd vs. Walton,* 2 *ib.* 620; *Peak vs. Chambers,* 7 *B. Mon.* 565.

As to whether Christian Brumback or his mother has the best title to the land, is not a question to be passed upon in this suit; the only question being as to whether the plaintiff's remedy is barred by lapse of time; and having considered the facts of the case, I am of opinion that originally the defendants had no

right, but that they, the plaintiffs, have delayed until they have no remedy. I shall therefore order the bill to be dismissed for want of equity, at the cost of the plaintiffs.