SMITH v. MABERRY.

Opinion delivered April 11, 1921.

1. CURTESY—HUSBAND'S ESTATE.—Upon the death of a wife, her hus-. band became tenant by the curtesy of her land for his life.

2. ADVERSE POSSESSION—LIFE TENANT AND REMAINDERMAN.—The possession of a husband as tenant by the curtesy, or of his grantee, is not adverse to the wife's heirs, and limitation does not run against such heir until the death of the life tenant.

3. ADVERSE POSSESSION — CONVEYANCE BY LIFE TENANT.—An attempted conveyance by a life tenant of the fee does not work a forfeiture of the life estate or start limitations running against the owners of the reversion.

4. LIFE ESTATE—LACHES OF LIFE TENANT.—The laches of a tenant by the curtesy would not prevent recovery of the land by the wife's heirs after the death of the life tenant.

5. EQUITY — LACHES.—The doctrine of laches has no application where the plaintiffs, though suing in equity, are not seeking equitable relief, and the action is not barred by the statute of limitations.

Appeal from Woodruff Chancery Court, Southern District; *A. L. Hutchins,* Chancellor; affirmed.

STATEMENT OF FACTS.

A. F. Maberry brought an action in the circuit court against Ira Smith and Christine Nelson to recover forty acres of land situated in Woodruff County, Arkansas.

The defendants answered, setting up title in themselves, pleaded the statute of limitations, and invoked the doctrine of laches. They asked that the cause be transferred to the chancery court, which was done.

After the cause was transferred to equity, it was tried upon an agreed statement of facts, as follows:

On October 1, 1845, the land in controversy was granted by the United States to Charles Newman and a

patent was issued to him. On October 2, 1865, after his death intestate, the heirs of Charles Newman conveyed said land to Elizabeth Newman. Elizabeth Newman married Thos. J. Bentley and died in 1866, leaving sur-. viving her Thos. J. Bentley, her husband, and her infant · daughter, who was the issue of said marriage, and who is now Ada Bentley Morrison. Thos. J. Bentley died on the 25th day of July, 1919. On the 24th day of January, 1919, Ada Bentley Morrison executed a special warranty deed to said land to A. F. Maberry. The deed recites that it is made in lieu of a lost deed, dated August, 1884. Some time prior to 1876, J. W. Aiken went into possession of said land, claiming to be the owner thereof, and remained in possession until his death, about the first of the year 1876.

On May 2, 1876, the probate court ordered the administrator of the estate of J. W. Aiken, deceased, to sell the land for the purpose of paying the debts of his estate. There were no bidders at the first sale, and the land was duly advertised for sale again in the manner provided by statute. Thos. J. Bentley became the purchaser at said sale upon paying the purchase price thereof, and on April 27, 1877, the administrator executed to him a deed to the land. Subsequently, Thos J. Bentley and wife executed a warranty deed to said land to DeWitt C. Ashley, which was duly filed for record. DeWitt C. Ashley and wife, by warranty deed, conveyed said land to William Hysmith, and this deed was duly filed for record. William Hysmith died in 1885, and his wife became administratrix of his estate. The probate court granted her an order to sell the land for the purpose of paying the debts of her deceased husband. E. Copeland became the purchaser at said sale, and the sale was duly approved by the court. E. Copeland conveyed the land to Jane Hysmith and she died in June, 1900. Under the terms of her will, the land was devised to Christine Nelson, Ira Smith and others, who in turn conveyed their interests to Christine Nelson and to Ira Smith. Ira Smith and Christine Nelson took possession

of the land in 1904, and have been in possession of it ever since. Their grantors have been in possession of it since 1876 up to that time.

The chancellor found that the plaintiff, A. F. Maberry, has the legal title to the land and was entitled to the immediate possession thereof. It was decreed that said plaintiff have and recover from the defendants, Ira Smith and Christine Nelson, said land and his costs.

The defendants have appealed.

*Bogle & Sharp,* for appellants.

1. Plaintiff in ejectment must recover on the strength of his own title and not upon the weakness of defendant's. 76 Ark. 244, 477. Elizabeth Newman was married to Thos. J. Bentley in 1865 and died in 1866, leaving surviving her husband and one child, Ada. This was prior to the Constitution of 1868 and of 1874 and under the common law. Thos. J. Bentley took estate by curtesy initiate in her property. 17 C. J., pp. 416-417. Bentley never abandoned his rights. After the adoption of the Constitution of 1874 the homestead right of Ada Bentley became superior to the curtesy right of her father, for she was yet a minor, and had no right to bring suit. 54 Ark. 9. Thos. J. Aiken was in possession in 1876 and prior thereto. His possession and that of those claiming under him has not been disputed. There was no abandonment by him or those claiming under him.

2. Appellee is barred by limitation and laches. 45 Ark. 25; 1 English Rep. 14; 13 Ark. 291. Where the statute makes limitations, must create also the exceptions; the courts can make none. 113 U. S. 449; 68 Ark. 449. Appellee is barred by laches. 22 Ark. 263. See, also, 64 Ark. 345; 54 *Id.* 580; 72 *Id.* 101, 451; 83 *Id.* 490; 101 *Id.* 230. See, especially, 121 Ark. 613. The chancellor erred in his findings. 49 Ark. 75; 70 *Id.* 483.

*Harry M. Woods,* for appellee.

1. Thos. M. Bentley had an estate by curtesy initiate in his wife's realty, and no right of action accrued

to appellee until the death of the holder of the life estate and the statute did not begin to run until the death of the life tenant, and there is no bar by limitation. 53 Ark. 400; 115 *Id.* 400; 79 *Id.* 408.

2. Appellee is not barred by laches. This is settled by the agreed statement of facts. No right of action accrued to Maberry until the death of the life tenant. The suit was brought in apt time.

HART, J. (after stating the facts). The record shows that on October 1, 1845, the land in question was granted by the United States to Charles Newman and a patent was issued to him. After his death intestate in October, 1865, his heirs conveyed said land, by deed, to Elizabeth Newman. She married Thos. J. Bentley, and in 1866 died, leaving surviving her Thos. J. Bentley, her husband, and infant daughter, the sole issue of their marriage. The infant daughter who was the issue of the marriage of Elizabeth Newman with Thos. J. Bentley is now Ada Bentley Morrison. On the 24th day of January, 1919, the latter executed a special warranty deed to A. F. Maberry. So that it will be seen that the legal title to the land is in A. F. Maberry.

The defendants and other grantors have been in possession of the land since some time prior to 1876 and claim title to the land by adverse possession. Their claim is not tenable. Thos. J. Bentley did not die until the 25th day of July, 1919. In 1866 he became tenant by the curtesy, and by virtue thereof he obtained an estate in the land for his life. *Neelly* v. *Lancaster,* 47 Ark. 175. It is true he conveyed his interest in the land to the grantors of the defendants, but he did not die until the 25th day of July, 1919.

It is well settled in this State that prior to the death of a tenant for life, neither his possession nor the possession of his grantee is adverse to the remainderman or reversioner. Hence the statute of limitations does not begin to run against the remainderman or reversioner until the death of the life tenant. The reason is that no

one can be in default in not bringing an action which he could not have maintained, if brought; and that no statute of limitations can commence to run until the time comes when the person claiming title or right of possession can successfully maintain his action. Neither the possession of the life tenant nor his grantee can by any possibility become adverse to the reversioner or remainderman for the reason that such possession is not an interference with the rights of the latter. *Jones* v. *Freed,* 42 Ark. 357; *Moore* v. *Childress,* 58 Ark. 510; *Gallagher* v. *Johnson,* 65 Ark. 90; *Ogden* v. *Ogden,* 60 Ark. 70, and *Stricklin* v. *Moore,* 98 Ark. 30.

It is contended, however, that the facts of this case constitute an exception to the general rule. The record shows that J. W. Aiken was in possession of the land when he died the first of the year 1876. It is not shown what paper title, if any, he had. As already seen, he could not have acquired title against the remainderman by adverse possession.

The probate court ordered the land of Aiken to be sold for the payment of his debts. Thos. J. Bentley became the purchaser at the sale and entered into possession of the land. He conveyed the land by warranty deed to DeWitt C. Ashley. The deed purports to convey the fee in the land. This, it is claimed, constituted an abandonment by Thos. J. Bentley of his life estate and puts the statute of limitations in motion. During the continuance of the life estate of Bentley, possession by his grantee under a deed purporting to convey the fee would not be adverse to the remainderman, so that the statute of limitations would be set in motion against him because the remainderman would have no right of action to recover the possession of the land during the continuance of the life estate. As said in *Christie* v. *Gage,* 71 N. Y. 189, the conveyance by the tenant for life of a greater estate than he possessed does not work a forfeiture, and the remainderman after the conveyance, as before, has no right to possession during the continuance of the life estate. See, also, *Pickett* v. *Pope,* 74 Ala. 122; *Pendley* v. *Madi-*

*son's Admr.,* 83 Ala. 484; *Mallus* v. *Snowman,* 21 Me. 201; *Stevens* v. *Winship,* 1 Pick. 318; 11 Am. Dec. 178; *Jackson* v. *Mancius and Vanderheyden,* 2 Wend. (N. Y.) 357; *Barrett* v. *Stradl,* (Wis.) 9 Am. St. Repts. 795; *Mettler* v. *Miller,* 129 Ill. 630, and *Constantine* v. *VanWinkle,* 6 Hill (N. Y.) 177, and case note to 19 L. R. A. at p. 841.

Counsel for the defendants also invoke the doctrine of laches as a defense to the suit. It is well settled that the estate of the heirs of the wife as remainderman is distinct from that acquired by her husband as tenant by the curtesy. Hence they can not be affected by any act of the life tenant or his grantee.

The rule is stated by Chief Justice Kent in *Jackson* v. *Schoonmaker,* 4 Johns. N. Y., p. 390, at 402, as follows:

"Neither a descent cast, nor the statute of limitations, will affect a right, if a particular estate existed at the time of the disseisin, or when the adverse possession began, because a right of entry in the remainderman can not exist, during the existence of the particular estate; and the laches of a tenant for life will not affect the party entitled. An entry to avoid the statute must be an entry for the purpose of taking possession, and such an entry can not be made during the existence of the life estate." (Citing cases.)

In Tiedeman on Real Property (2 ed.), par. 400, it is said: "The tenant can not do anything to defeat a vested remainder; a disseisin of the tenant affects the remainder in no manner. Nor can the possession of the tenant be deemed adverse to the remainderman, either for the purpose of preventing the latter from conveying his interest or with a view to defeat it under the statute of limitations, unless the possession be continued after the termination of the particular estate. The statute of limitations does not begin to run until the remainderman takes effect in possession."

The rule was recognized by this court in *Lesser* v. *Reeves,* 142 Ark. 320, where the court held that the doctrine of laches has no application where the plaintiffs are not seeking equitable relief, and the action is not

barred by the statute of limitations. To the same effect, see *Anders* v. *Roark*, 108 Ark. 248, and *Galloway* v. *Battaglia*, 133 Ark. 441.

There is nothing in the record tending to show that the defendants were induced to change their condition with respect to the land by any conduct on the part of the plaintiff, and the plaintiff is not guilty of laches.

It follows that the decree must be affirmed.