SADLER *v.* CAMPBELL.

Opinion delivered November 28, 1921.

1.  QUIETING TITLE—COMMON SOURCE OF TITLE.—Where plaintiff and defendants derive their titles to land from a common ancestor, defendants cannot challenge the source of plaintiffs' title, though she acquired possession of the land by virtue of a void decree in partition.

2.  DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—On the death of an heir intestate and without issue, lands descended from the mother ascend to the mother's heirs, under Crawford & Moses' Dig. § 3480.

3.  CURTESY—NATURE OF ESTATE.—Curtesy at common law is a life estate which a husband acquires, upon the birth alive of lawful issue of the marriage, in all the lands of which his wife was seized in fee; the estate being initiate upon marriage, seizin and birth of issue, and becoming consummate upon the death of the wife.

4.  ADVERSE POSSESSION—POSSESSION OF LIFE TENANT.—Since the deed of a life-tenant, though purporting to convey the fee, conveys merely the right to possession and to the rents and profits during the grantor's life, the possession of the grantee thereunder during the grantor's lifetime cannot become adverse to a remainderman.

5.  EQUITY—LACHES.—One who seeks relief in equity to which he is entitled at law, and which is not barred by the statute of limitations, is not barred by laches.

6.  APPEAL AND ERROR—PRESUMPTION.—Where the answer to a bill to quiet title alleged the making of improvements by defend-

ants, but there was no evidence as to such improvements, a decree was rendered quieting title in plaintiff without awarding the value of such improvements, it will be assumed on appeal either that the issue as to the improvements was abandoned or that there was no proof to justify a judgment for such improvements.

7. QUIETING TITLE—ALLEGATION OF IMPROVEMENTS.—A denial of allegations of the answer as to improvements is not necessary, but such allegations are in issue without a formal denial and must be proved by the defendants.

8. JUDGMENT—RES JUDICATA.—A decree in a former suit to which the parties to a pending suit were strangers is not binding on them.

9. QUIETING TITLE—TITLE OF PLAINTIFF.—Where the parties to a suit to quiet title do not deraign title through a common source, the plaintiffs, to recover, must deraign title from the government.

Appeal from Yell Chancery Court, Dardanelle District; *Jordan Sellers,* Chancellor; reversed in part.

*Davis & Bohlinger, Parker & Lee* and *Evans & Evans,* for appellants.

Mrs. Wooten never acquired any title to the lands involved. On the death of Ruth Ann Keywood, these lands, inherited by her from her father, ascended to the nearest lineal ancestor in the paternal line, if living, and if dead, to his collateral heirs, and did not vest in the heirs of Ruth Ann's mother. Therefore, neither the Price nor the Vicker heirs inherited any interest. Kirby's Digest, § 2645; *Id.* § 2636, clause 3; *Id.* § 2646; 15 Ark. 555.

She acquired no title by the order of the circuit court allotting to Sarah Price half of the land involved in this suit, because, first, the land in section 14 was never mentioned in the partition proceedings; second, the title never having been put in issue, that order did not vest title nor color of title in her. 96 Ark. 89; Thompson, Title to Real Property, § 670; 70 Ark. 432; 71 *Id.* 544. Third, Mrs. Wooten was dead at the time the allotment was made in the name of Sarah Price, and the allotment was therefore a nullity. 36 Ark. 456. Fourth, the order

of partition was void, and no title could be based upon it. 15 Cyc. 42, note 61; 3 Johns 459; 26 Barb. 499; 12 S. W. 784; 23 Cyc. 926, 931; 5 Am. Eng. Enc. of L. 1st Ed., 432; 17 *Id.* 1st Ed., 810; 23 Cyc. 919; *Id.* 963; *Id.* 1073, 1074; 48 Ark. 151; 101 Ark. 390; 60 *Id.* 369; Kirby's Digest §§ 5771, 5772.

At no time during the life of Mrs. Wooten was she seized of an estate of inheritance in the Keywood land, nor had she at any time a right to the possession of the freehold. Her husband, therefore, acquired no curtesy right in that land. 64 Ark. 357; 4 Am. & Eng. Enc. of L. 1st Ed., 961, 963.

Appellee is barred by the statute of limitations. Her right of action, if any, accrued at the date of the death of Newton Wooten, and, that right not having been asserted within seven years of his death, it is barred. Kirby's Digest, § 5056.

Appellee is not an heir of Newton Wooten. If he inherited from his mother, the title ascended at his death to his mother's heirs as prescribed by § 2645, Kirby's Digest. As to Mrs. Wooten's heirs see Kirby's Digest §§ 2636, clause 3, 2646, 2648. The nearest lineal and paternal ancestor of Mrs. Wooten was Isaac Price, her father. He being dead, the estate, if any, was transmitted through him to his only daughter, Mrs. McCrackin, and not to the heirs of James Vickers nor to the heirs of the mother, Mrs. Vickers. 15 Ark. 555, 591. Mrs. Campbell, the appellee, being of the half blood in the maternal line, is postponed to the paternal line. *Id.*

The burden was on appellee to show her title. Kirby's Digest § 2742. It is not true, as she alleged, that both parties trace title to the same source.

Perry, who held under color of title, by virtue of a warranty deed from Mrs. McCrackin and her husband and W. P. Wooten, acquired title by adverse possession, and Sadler likewise acquired title by adverse possession from the date of Perry's deed in 1891 to the time this suit was instituted.

If appellee was entitled to judgment, then, under the allegations of the answer, not denied by the plaintiff, the defendants were entitled to judgment for improvements, and possession should not have been awarded until said cost was paid. Kirby's Digest, § 2754; 48 Ark. 183; 120 *Id.* 620; 64 *Id.* 645.

*Hays & Ward,* for appellee.

It having been proved that the plaintiff and the defendants deraign title from the same, source, to-wit: Sarah Price Wooten, defendants cannot assail that title, and plaintiff is not bound to trace title beyond the common source. Even if the partition proceeding in the circuit court was a nullity, defendants cannot question it. 41 Ark. 21; 44 *Id.* 517; 109 *Id.* 500; 137 *Id.* 170; 106 N. C. 553; 11 S. E. 322; 54 Ga. 689; 7 A. L. R. 860; 145 U. S. 367; 21 S. W. 299.

Appellants are concluded by the judgment in partition. C. & M. Dig. § 8108.

Even without a judgment of court dividing the lands, the parties themselves having agreed upon the partition, and each having gone into possession, and the same having been acquiesced in for fifty years, appellants are now estopped to deny such division. 84 Ark. 584; 121 *Id.* 197; 77 *Id.* 309.

Notwithstanding the deed of W. P. Wooten to J. K. Perry purported to carry the fee simple title in the lands, Perry acquired thereby only the right of possession thereof for the lifetime of Wooten. 35 Ark. 84; 43 *Id.* 427; 58 *Id.* 510; 117 *Id.* 371; 126 *Id.* 1; 60 *Id.* 74.

Appellee is not barred. The statute does not run against the reversioner until the death of the life tenant. 35 Ark. 90; 44 *Id.* 490; 58 *Id.* 510; 60 *Id.* 7. The possession of the life tenant or his grantee is not adverse to the reversioner or remainderman. 58 Ark. 510; 128 *Id.* 342; *Smith* v. *Maberry,* 148 Ark. 216.

W. P. Wooten held the lands, not adversely to, but in subordination to, the rights of appellee. 97 Ark. 33; 33 *Id.* 633; 42 *Id.* 118; 58 *Id.* 142.

As to the heirs of Newton Wooten and of his mother, the statutes referred to by appellants are not applicable; but the inheritance goes in accordance with § 2645, Kirby's Digest, being § 3480, C. & M. Digest; 129 Ark. 7; *Id.* 573.

Appellants, without having made proof supporting the allegations as to betterments, were not entitled to judgment therefor. 13 Ark. 88; 41 *Id.* 394.

WOOD, J. This is an appeal from a decree of the Yell Chancery Court in favor of the appellee against the appellants. The decree adjudged that the appellee was the owner and entitled to the possession of an undivided one-fourth interest in the S½ of the SE¼ of section 15, (designated in the record and hereafter called the "Keywood Place") and the SW¼ (fr.) of section 14 in township six north, range 19 west, and the accretions thereto. The decree also awarded the appellee judgment in the sum of $700 as her portion of the rents and profits with interest thereon at the rate of six per cent. per annum from the rendition of the decree, less $19.50, taxes for the years 1919 and 1920. While the decree awards to the appellee an undivided one-fourth interest in the SW fr. ¼ of section 14, and the accretions thereto, the appellee, in her brief, has abandoned here her claim to this tract, for she says that "by the judgment of the circuit court of Yell County rendered in 1870 to Evaline Vickers and James Vickers jointly were set apart the N½ of the SW¼ of section 36, T. 6 N. R. 20 W. This was the Tipton tract, being seventy-four acres, * * * * and to Laura McCrackin and Sarah Price, sisters, jointly, the commissioners set apart the S½ of the SE¼, section 15-6-20, known as the "Keywood tract, being sixty-six acres." Again she says: "This Keywood tract is the land involved in this suit."

The appellee instituted separate actions against the appellants, one in the chancery court, September 19, 1919, and the other in the circuit court of Yell County. The purpose of these actions was to have the appellee adjudg-

ed the owner and entitled to the possession of the lands in controversy. The action at law was transferred to the chancery court and consolidated with the cause pending in that court, and the consolidated cases proceeded to a trial and decree in the chancery court.

The appellee alleged in her complaint, among other things, that she and the appellants deraigned title from a common source as follows: "That the original owners of said lands from whom plaintiffs and defendants deraigned title were Laura Vickers and Miss Ruth Ann Keywood; that Laura Vickers was the mother of the following children, who were her heirs at law, her husband being dead at the time of the partition of her lands: 1st. Lavina Price, who married E. L. McCrackin. 2nd. Sarah Price, who married W. P. Wooten. 3rd. James Vickers, who died without issue. 4th. Evaline Vickers, this plaintiff, who married W. S. Campbell in January, 1874, and since and now is, a married woman. 5th. Ruth Ann Keywood, who with her mother was the owner of said lands; that Ruth Ann Keywood was never married, died in 1867, about eighteen years of age, without issue, leaving the first four children, her sisters and brother of the half blood on her mother's side as her only heirs at law; that, on the death of Laura Vickers and Ruth Ann Keywood, said lands descended in equal parts to Lavina McCrackin, Sarah Price, James Vickers, and plaintiff, who held same as tenants in common.

That at the November term, 1870, of the chancery court of Yell County, Arkansas, Lavina McCrackin, Sarah Price, James Vickers and Evaline Campbell filed a petition for the partition and division among them of said lands, and other lands, alleging that they were the only heirs at law of Laura Vickers and Ruth Ann Keywood, both deceased, who at the time of their death were owners of said lands, and the court appointed commissioners to partition said lands among the four tenants in common."

Then follows an allegation that the lands were partitioned by the circuit court of Yell County, and the title

to the lands vested in fee simple in Lavina McCrackin and Sarah Price, giving to each an undivided one-half interest. The complaint then alleged that Sarah Price married W. P. Wooten after the lands had been set apart to her as above; that one child, Newton Wooten, was born to them; that Mrs. Wooten died in 1871 intestate, leaving surviving an infant son, Newton Wooten, and her husband, W. P. Wooten; that at the time of her death she was the owner of an undivided half interest in the lands which descended to her son, Newton Wooten, subject to the curtesy of her husband, W. P. Wooten; that Newton Wooten lived three days after the death of his mother, and at his death his interest in the lands vested in fee simple subject to the curtesy rights of W. P. Wooten, his father, in his material aunts and uncle as above; that his uncle James Vickers, died intestate and without issue, leaving as his only heirs at law his sister of the half blood on his mother's side, Lavina McCrackin and plaintiff, his father being dead; that James Vickers at the time of his death was the owner as the heir of Newton Wooten of an undivided one-sixth interest in said lands, which thereupon became vested in Lavina McCrackin and plaintiff, subject to the curtesy of W. P. Wooten; that in 1883 W. P. Wooten and his then wife, Mary E., and Lavina McCrackin and E. L. McCrackin executed a deed to J. K. Perry; that, at the time of the execution of this deed, W. P. Wooten had a life estate only in an undivided one-fourth interest in the lands, and by said deed conveyed such interest to J. K. Perry; that Perry in 1891 conveyed the lands to Elizabeth C. Sadler and Rufus Sadler under whom appellants claim; that W. P. Wooten died in 1919, and upon his death the plaintiff was entitled to immediate possession of an undivided one-fourth interest in the lands. She prayed that the lands be partitioned, and, if this could not be done, that they be sold; that she have the portion of the lands or the proceeds of the sale to which she was entitled, and have judgment for rents and profits.

In their answer the appellants denied all the material allegations of the complaint. They deny that they were tenants in common with the appellee; deny that she had any right, title, or interest in the lands; deny that she had ever been in possession of same with or without color of title. They admit the appellants claim the lands by virtue of the will of Elizabeth C. Sadler. Among other things, they allege that John T. Keywood died seized and possessed of the lands; that he left surviving him his widow, Laura Keywood, who afterwards married James Vickers, and had by him two children, plaintiff and her brother, James Vickers, Jr.; that Keywood, at his death, left surviving him his daughter, Ruth Ann, his only child and heir at law, and his widow, Laura Keywood; that the only interest Laura Keywood, afterward Vickers, had in the land was a dower interest; that at the death of Keywood the lands descended to his daughter, Ruth Ann Keywood; that Mrs. Laura Keywood Vickers died before Ruth Ann Keywood, and that at the death of Ruth Ann Keywood the lands vested in her paternal uncle and aunts, to-wit, Jeff Keywood, and others, and not in the half sisters and half brother of Ruth Ann Keywood.

The appellants set up that the partition under which the appellee claims title through Ruth Ann Keywood was void and was obtained by fraud practiced on the court. They allege that at the time of the approval of the report of the commissioners appointed to partition the lands under that judgment, Mrs. Sarah Price, then Wooten, and her son, Newton Wooten, were dead; that the title of the heirs of John T. Keywood who inherited the lands from him was not put in issue and was not divested by that judgment of partition, and that Sarah Price Wooten acquired no title or right of possession to the lands, and hence none descended from them to the plaintiff (appellee.) They deny that Sarah Price Wooten obtained title by purchase from Ruth Ann Keywood, but say that, if so, then on the death of Newton Wooten the lands would vest in the father of Sarah Price Wooten

and descend at his death to his daughter, Mrs. Lavina McCrackin. They deny that the plaintiff obtained title by the statute of limitations. They deny that the plaintiff and the defendants claim under the same source of title, and allege that Wooten and Lavina McCrackin obtained title through the heirs of Ruth Ann Keywood; that they entered into possession of the same and held the same adversely for more than seven years, and had title by limitation in 1883, when they conveyed the same to James K. Perry; that if Newton Wooten, at his death June 15, 1871, owned an undivided interest in the lands and the plaintiff and her half brother inherited such interest, they were at that time entitled to the possession, and plaintiff, being at that time a single person, the statute of limitations began to run against her in favor of Wooten and Lavina McCrackin, who were then in possession of the lands; that they acquired title by such adverse possession, which title was conveyed by them to Perry and by him to Mrs. Elizabeth C. Sadler, who willed the lands to appellants.

The appellants set up title by adverse possession and pleaded the statute of limitations and laches. Such are the issues. The evidence adduced at the trial established the following facts, which are uncontroverted.

Miss Laura Tipton was thrice married; first, to Isaac Price, then to John T. Keywood, and then to James Vickers. By her first husband she had two daughters, Lavina, who married E. L. McCrackin, and Sarah, who married W. P. Wooten. By Keywood she had one daughter, Ruth Ann, and by Vickers she had two children, James Vickers, Jr., and Evaline, who married W. S. Campbell in the year 1874. John T. Keywood, the owner in fee of the "Keywood place" died about the year 1852. Laura Price Keywood Vickers died in 1864, and Ruth Ann Keywood died in the year 1868 intestate and without issue. At the November term in the year 1870 Lavina McCrackin and her husband, Sarah Price and James and Evaline Vickers, minors, through their guardian, filed in the circuit court a petition for the partition of the "Keywood place"

and other lands, alleging that they were the only persons interested therein, and no others were made parties. The court entered a judgment at that term for a partition of the lands described in the petition and appointed commissioners and directed them to make a partition and report at a subsequent term of the court. The commissioners made the partition and set aside the "Keywood place" to Lavina McCrackin and Sarah Price. Their final report was made November 8, 1871, and the same was approved by the court on that day.

After the judgment for partition, but before the final report of the commissioners was made to and approved by the court, Sarah Price married W. P. Wooten. To them was born a son, Newton Wooten. The mother died about the 12th of June, 1871, in childbirth, leaving her son and only issue Newton Wooten, who survived her only three days. James Vickers died in the year 1882 without issue.

The appellants contend that Sarah Wooten did not during her lifetime take possession of the lands set apart to her by the commissioners under the partition decree.

The appellee testified that, after the land was divided, Lavina McCrackin and Sarah Price Wooten took possession of the Keywood farm; that they were in possession and renting the same at the time of Mrs. Wooten's death; that after her death her husband, W. P. Wooten, took possession of Mrs. Wooten's part and controlled it until he sold it to Perry.

By agreement between the parties evidence contained in a transcript of the record before the Supreme Court in an action between Mrs. James K. Perry and R. C. Sadler was considered by the chancery court herein. In that case W. P. Wooten testified that he was a joint owner with E. L. McCrackin and Lavina McCrackin of a tract of land in Yell County known as the "Keywood Place," (describing it). "I was," he says, "joint owner of the above-described land. Said lands were inherited by my wife and the wife of E. L. McCrackin. At the time of the conveyance made by McCrackin and myself, my

wife was dead, and my interest in the land at that time was the interest of a child born during the marriage, who died soon after its mother's death. In 1883 McCrackin and his wife and myself sold the 'Keywood Place' to James K. Perry.''

In that case a warranty deed dated May 16, 1883, was also in evidence conveying the "Keywood Place" as above described to James K. Perry from E. L. Mc-Crackin and wife and W. P. Wooten and wife. Perry took possession under said deed and held the same until the 9th of June, 1891, when he (Perry) conveyed to R. C. and Elizabeth Sadler, under whom the appellants claim, and the Sadlers have been in possession ever since.

1. The first question for our consideration is: Do the appellee and the appellants deraign title from a common source? The testimony of the appellee shows that Mrs. Sarah Wooten and Mrs. McCrackin took possession of the "Keywood Place" that was set apart to them by the commissioners appointed by the court to make the partition of this and other lands; that they were in possession of the same and owned it at the time of Mrs. Wooten's death. The testimony of Wooten was to the effect that the Keywood farm was inherited by his wife and the wife of McCrackin, and that at the time of the conveyance made by him and McCrackin and wife to Perry, his (Wooten's) interest in the land was that of a child born during his marriage to Sarah Price, which child died soon after his mother's death. While Wooten was mistaken as to the nature of the estate he held in the land, his testimony shows unmistakably that the estate he claimed was derived from his wife, Sarah, at the time of her death. The undisputed testimony shows that James K. Perry went into possession of the land under the warranty deed executed to him by E. L. McCrackin and wife and W. P. Wooten. We conclude, therefore, that the appellee and the appellants trace their title to the land in controversy to a common source, to-wit, Sarah Price Wooten. Such being the fact, even though the judgment in partition, under which Mrs. Wooten ob-

tained possession of the land, be void, and even though she acquired no title thereunder, nevertheless appellants cannot challenge the source of her title. *Stafford* v. *Watson,* 41 Ark. 18, 21; *Freisler* v. *McKennon,* 44 Ark. 517; *Wood* v. *Freeman Lumber Co.,* 109 Ark. 499; *Eichoff* v. *Scott,* 137 Ark. 170, 173, 174; *Cox* v. *Hart,* 145 U. S. 376; *Bonds* v. *Smith,* 106 N. C. 553; *Scott* v. *Singer,* 54 Ga. 689, and numerous cases cited in note to *Jenkins* v. *Marston,* 7 A. L. R. p. 860. Since the appellee and appellants claim from a common source, it was only necessary for the appellee to prove that her title was superior to that of the appellants. This she has done, for when Mrs. Sarah Wooten died intestate, her son Newton inherited her interest in the "Keywood Place," and at his death without issue this interest in the lands ascended or passed to his material aunts and uncle. Sec. 3480, C. & M. Digest; *Kelley's Heirs* v. *McGuire,* 15 Ark. 555; *West* v. *Williams,* 15 Ark. 682; *Oliver* v. *Vance,* 34 Ark. 564; *Campbell* v. *Ware,* 27 Ark. 65; *Coolidge* v. *Burke,* 69 Ark. 238; *Carter* v. *Carter,* 129 Ark. 7 and 573.

2. Although Wooten, in his testimony, designated the interest he held in the land as that of a child born during his marriage to Sarah Price, this was a mistake of law on his part, for Wooten did not inherit any interest from his wife, nor, as we have seen, did he inherit any interest from his son. The interest which Wooten acquired in the Keywood Place was that of curtesy. Curtesy at the common law is an estate for life which the husband acquires upon the birth of lawful issue of the marriage born alive and capable of inheriting, in the lands or tenements of which his wife is seized in fee simple or in tail. *Owens* v. *Jabine,* 88 Ark. 468. See also *Smith* v. *Maberry,* 148 Ark. 216. Curtesy becomes initiate upon marriage, seizin, and the birth of issue, and becomes consummate when added to the above requisites is the death of the wife. 1 Washburn on Real Estate, Sec. 313; 17 C. J. 413 *et seq.* 416-421; 8 R. C. L. p. 387, Secs. 1-6 inclusive. "Seizin is either in deed or in law.

Seizin in deed in actual possession." *Tate* v. *Jay,* 31 Ark. 576. See also *McGuire* v. *Cook,* 98 Ark. 118.

Mrs. Sarah Wooten and Mrs. McCrackin took possession of the "Keywood Place" in 1870, and Mrs. Sarah Wooten was in possession when she married W. P. Wooten and remained in possession until she died in 1871. As we have seen, Mrs. Sarah Price Wooten was the common source of title, and at the time of her marriage to W. P. Wooten was in actual possession of the land in controversy, and after her marriage a son was born alive and capable of inheriting from her. This all occurred before the married woman's statute (1873) and the Constitution abolished the curtesy initiate. Therefore, W. P. Wooten had such curtesy, which, upon the death of his wife, Sarah, in 1871, became consummate. *Loyd* v. *Planters' Mutual Ins. Co.,* 80 Ark. 486; *Neeley* v. *Lancaster,* 47 Ark. 175; *Hampton* v. *Cook,* 64 Ark. 353. As the estate of curtesy in W. P. Wooten was only a life estate, it was inferior to the estate which the appellee inherited upon the death of Newton Wooten.

3. This brings us to the consideration of the questions as to whether or not the appellants have acquired title by the seven years statute of limitations, and whether or not the appellee is barred by that statute and by laches, all of which questions we will consider together. Although the deed from W. P. Wooten purported to convey to J. K. Perry the fee in the Keywood place, nevertheless he could not convey a greater estate than that of which he was possessed. Therefore, the deed of W. P. Wooten purporting to convey the fee to Perry in fact conveyed to him the right to the possession and rents and profits of the lands during Wooten's life only. *Morris* v. *Edmunds,* 43 Ark. 427; *Smith* v. *Maberry, supra.* W. P. Wooten having the right to the possession of the lands during his life, the appellee could not institute an action to recover her interest which was inherited from Newton Wooten until the death of the life tenant, W. P. Wooten.

It is well established by the decisions of this court that "neither the possession of the life tenant nor his grantee by any possibility can become adverse to the reversioner or the remainderman for the reason that such possession is not an interference with the rights of the latter." *Smith* v. *Maberry, supra.* The appellee instituted an action to recover her interest in the "Keywood Place" in less than one month after the death of W. P. Wooten, the life tenant. She is seeking relief to which she is entitled at law, and is therefore neither barred by the statute of limitations nor by laches. *Smith* v. *Maberry, supra. Lesser* v. *Read,* 142 Ark. 320; *Galloway* v. *Battaglia,* 133 Ark. 441; *Anders* v. *Roark,* 108 Ark. 248; *Neeley* v. *Martin,* 126 Ark. 1; *LeSieur* v. *Spikes,* 117 Ark. 366; *Ogden* v. *Ogden,* 60 Ark. 74; *Moore* v. *Childress,* 58 Ark. 510; *Padgett* v. *Norman,* 44 Ark. 490; *Morris* v. *Edmund, supra; Banks* v. *Green,* 36 Ark. 84.

4. There is an allegation in the answer to the complaint in the chancery action that the appellants, believing themselves to be the owners, had made valuable improvements on the land to the value of $1,000, and that plaintiff had not tendered one-fourth thereof nor offered to pay for the improvements nor the taxes paid thereon by the defendants before instituting her action against them. There is no allegation of this kind in the answer to appellee's action at law. The answer concludes with a prayer that the judgment of the court in partition rendered in 1870 and the approval of the report of the commissioners in that action be cancelled and set aside, and that the appellee's complaint be dismissed, and that the appellants have judgment for costs and for such other relief as in equity and good conscience they are entitled to. We do not find that the appellee denied the allegations of the answer as to the improvements and taxes. But there is no evidence in the record as to the amount appellants expended for improvements. It does appear that the court in its decree rendered judgment in favor of the appellee in the sum of $700 less $19.50, taxes

for the years 1919 and 1920. Since the court had under consideration the amount claimed for rents and taxes and rendered a decree in favor of the appellants, the court, we must assume, did not render any decree in favor of the appellants for the improvements claimed because that issue was abandoned, or because there was no proof in the record to justify a judgment in appellant's favor for improvements. A denial of the allegations of the answer as to the improvements and taxes was not called for under the betterment statute.   That allegation was in issue without a formal denial thereof, and it was incumbent on the appellants to prove the allegations in order to entitle them to a judgment thereon. Sections 3703-3704, Crawford & Moses' Digest.

5.   As we view the statements made in brief of counsel for the appellee concerning the land in section 14 and the accretions thereto for which appellee obtained a decree against the appellants, the appellee has abandoned her claim to those lands.

. Therefore, the decree as to the lands in section 14 should be reversed and remanded, and appellee's complaint as to that tract dismissed, and appellant's title to that tract quieted. It is so ordered. The decree in all other respects is correct, and it is affirmed.

Justice HART not participating.

WOOD, J., (on rehearing).  On reading the petition and brief of the appellee for rehearing, we are convinced that we were in error in holding that the appellee had abandoned her rights in the decree to the SW frl. 1/4 of Sec. 14-6-20, and this conclusion makes it necessary to consider whether or not the decree of the court was correct in awarding the appellee an undivided one-fourth interest in the SW frl. 1/4 of section 14-6-20. Upon an examination of the record as to this tract we find that the appellants and the appellee do not trace their title to this particular tract to a common source. The appellee traced her title to the Keywood place to a suit in partition in which, by the judgment of the circuit court of Yell County at its November term, 1870, the court

awarded to Lavina McCrackin and Sarah Price, sisters jointly the S½ of the SE ¼ of section 15-6-20, known as the "Keywood tract," being 66 acres. It will be observed that this decree, from which the appellee deraigns her title, did not adjudge to Mrs. Sarah Price Wooten, through whom the appellee claims, any title whatever in any lands in section 14.

After the judgment for partition, but before the final report of the commissioners was made and approved, W. P. Wooten married Sarah Price. Sarah Price Wooten took possession of the lands awarded her under the partition decree. She died about June 12, 1871, after the birth of a son by Wooten. After her death, W. P. Wooten again married. On May 16, 1883, Lavina McCrackin and her husband, E. L. McCrackin and W. P. Wooten and his then wife, Mary E., joined in a warranty deed in which they conveyed the "S½ of the SE¼ of Sec. 15, township ———N., and range 20 west, containing 66 acres more or less" to James K. Perry. On the 9th of June, 1891, James K. Perry and wife conveyed to Mrs. Elizabeth C. Sadler for her natural life and Rufus C. Sadler, and his heirs and assigns forever in remainder after the death of Elizabeth C. Sadler, the following described land in the Dardanelle District of Yell County, Arkansas, to wit: "The S— of the E fr. ¼, containing 68 acres more or less, and 32 acres off of the south side of the N½ of the SE fr. ¼, all in Sec. 15, tp. 6 N. of base line, and range 20 west of the fifth principal meridian, making in the aggregate 100 acres more or less."

It will be noticed that the deed from McCrackin and wife and Wooten and wife does not convey to Perry any lands in section 14, but only 66 acres in section 15, describing it; nor does the deed from Perry to the Sadlers convey any land whatever in section 14. After these deeds passed, the Sadlers claimed that Perry should have conveyed to them, and intended to convey to them, a small tract of .62 of an acre described as the SW fr. 1/4 of section 14, Tp. 6 N., R. 20 W., and its accretions,

and in a suit between Perry and the Sadlers it was so held. *Perry* v. *Sadler,* 76 Ark. 45. In that suit it was shown that Perry and Sadler entered into a written contract containing, among others, the following clause: "Said Perry to deed unencumbered to said Sadler, the *Keywood place,* say about 68 acres more or less, and 32 acres off lower side of Brown place along the upper side of the Keywood place." The court, in that case, said: "It is indisputably shown that it was an unintentional oversight in the conveyance to Perry and from Perry to Sadler that said fractional quarter section of section 14 was not included. It was a small wedge-shaped tract running almost to the dwelling house on the Keywood place, including part of the yard and garden. This part of it was enclosed with other land, and all of it under control of the owner of the Keywood place. The parties did not know that this fraction did not pass under the deeds, as they supposed all of this land was in section 15, and it was clearly shown that it was intended to be conveyed." After quoting the above, counsel for the appellee say: "The Supreme Court has held and declared that the SW fr. ¼ of section 14 is a part of the Keywood place." But the appellee was not a party to that suit, and neither she nor the appellants in this case are bound by that decision. That decision could not settle the rights of the parties to this litigation, and the appellee could not use that decision as proof that the lands in section 14, which she now claims, were embraced in the "Keywood place" which was partitioned to Sarah Price and Lavina McCrackin. The decision of *Perry* v. *Sadler, supra,* was not competent to show that Mrs. Sarah Price Wooten ever acquired any possession to the lands in section 14. She and Mrs. McCrackin, so far as the parties to this suit are concerned, must be held under the partition decree to have taken possession of the "Keywood place" described as in section 15 and not in section 14. Wooten, by his curtesy rights, acquired only such possession as his wife, Sarah Price Wooten, had. He and Mrs. McCrackin conveyed the lands to

Perry in section 15 and not in section 14, and Perry likewise conveyed to the Sadlers the land in section 15 and not in section 14. So, as far as the record evidence of title is concerned, there is an utter absence of proof to show that the parties to this lawsuit deraigned title to the lands in section 14 from a common source. Such being the case, before the appellee could have her title quieted and dispossess the appellants of the lands in section 14, it devolved upon her to show that she had perfect title by tracing same back to the government. This she has wholly failed to do. It follows that the decree of the chancellor as to the lands in section 14 was erroneous and must be reversed for the reason now given. The appellee's motion for a rehearing as to this tract is therefore overruled.

The appellant's motion for rehearing as to the lands in section 15 is overruled. Mrs. Sarah Price Wooten was the common source of title as to this tract. Therefore, appellants are not allowed to challenge her title or to inquire of its source. When she died, her son Newton inherited her estate. His estate was ancestral from her, and at his death, intestate, and without issue, his estate ascended to the line of the mother from whom he inherited, as stated in the original opinion.

The trial court, having rendered a decree in favor of the appellee for both the lands in section 14 and in section 15, awarded a judgment in favor of the appellee in the sum of $700 as rents for both tracts. Since our conclusion is that the appellee is not entitled to a decree for the lands in section 14, it follows that she is not entitled to a judgment for rents as to this tract. There is no proof in the record from which we can enter a satisfactory decree as to the betterments, rents and profits when same are apportioned between the lands in sections 14 and 15. The decree of the chancellor in favor of the appellee in the sum of $700 for rents must therefore be reversed.

The decree therefore will be reversed as to the lands in section 14, and the cause remanded with direc-

tions to dismiss the appellee's complaint for want of equity as to that tract and quiet appellants' title thereto; and also with directions, if the parties are so advised, to allow them to further develop the cause on the issue as to betterments, rents, and taxes. In all other respects the decree is affirmed.