GIBBS *v.* BATES.

4-8866                                        222 S. W. 2d 805

Opinion delivered June 27, 1949.

Rehearing denied October 3, 1949.

*Harrelson, Harrelson & Cannon,* for appellant.

*Norton & Norton,* for appellee.

ED. F. McFADDIN, Justice. This appeal presents a controversy that has been intermittently in litigation since 1896; and involves the same parties and the same land as were before us in Gibbs v. Bates, 150 Ark. 344, 234 S. W. 175.

U. W. Jett was the husband of the present appellee, Mrs. Nora L. Bates. Jet owned a farm of 67 acres; and in 1894 he and the appellee signed and delivered a deed of the farm to appellant, Mrs. Eva E. Gibbs. The grantee never obtained possession of the lands. U. W. Jett died shortly after the execution of the deed, leaving surviving his widow and one son who died in 1916.

Litigation began after the death of U. W. Jett: (a) in 1896 Eva E. Gibbs filed a suit against Nora Jett (now Nora L. Bates), seeking possession of the land. Answer was filed, and judgment was rendered in favor of the defendant. (b) In 1897 Eva E. Gibbs filed a complaint in the St. Francis Circuit Court, praying for possession of the land, but finally took a nonsuit in that case.* (c) In August, 1920, Eva E. Gibbs filed a suit in the St. Francis Chancery Court against Nora L. Bates, in which the relief sought was the quieting of title of plaintiff. The evidence showed that Eva E. Gibbs was not in possession of the land, and her suit was dismissed by the Chancery Court; and that decree was affirmed by this Court in 1921, in the case of Gibbs v. Bates, *supra.*

---

* In defending one of these suits, Mrs. Bates set up that the 1894 deed was void because of her minority.

Mrs. Nora L. Bates continued in possession of the land at all times herein mentioned; and on January 7, 1948, filed in the Chancery Court this present suit to quiet her title. Mrs. Bates alleged: (a) that she was in sole and exclusive possession of the land, and had held the same continuously in actual, open, visible, notorious and adverse possession, under a claim of ownership, for more than 40 years; and (b) that Mrs. Gibbs had actual knowledge of such possession and claim of ownership on the part of Mrs. Bates for more than 25 years. Mrs. Gibbs admitted Mrs. Bates' possession, but claimed that Mrs. Bates was merely a tenant for life, and therefore could not claim by adverse possession and have her title quieted. Mrs. Gibbs insisted that the deed she held from U. W. Jett and wife conveyed the fee title, subject only to the dower and homestead of Mrs. Bates; and that upon Mrs. Bates' death the lands and possession would pass to Mrs. Gibbs by virtue of said deed. The issue was thus joined as to whether Mrs. Bates had acquired the fee title by adverse possession. The Chancery Court found for Mrs. Bates, and entered a decree quieting her title; and this appeal challenges that decree.

We have a wealth of cases which recognize the rule that possession of a life tenant is not adverse to the remainderman.† Nothing herein is opposed to the said rule of those cases; but we hold that the said general principle has no application to the case now before us. The relationship between Mrs. Bates and Mrs. Gibbs was never that of a life tenant and a remainderman, because the deed to Mrs. Gibbs did not undertake to create a life estate and a remainder.

In Wallace v. Wallace, 179 Ark. 30, 13 S.W. 2d 810 Mr. Justice McHaney, speaking for this Court, discussed remainders and how they were created:

" 'A remainder,' says Mr. Tiedeman, 'is therefore a future estate in lands, which is preceded and sup-

† Some of these cases are: Ogden v. Ogden, 60 Ark. 70, 28 S. W. 796, 46 Am. St. Rep. 151; Killeam v. Carter, 65 Ark. 68, 44 S. W. 1032; Collins v. Paepcke-Leicht Lbr. Co., 74 Ark. 81, 84 S. W. 1044; Stricklin v. Moore, 98 Ark. 30, 135 S. W. 360; Davis v. Neal, 100 Ark. 399, 140 S. W. 278, L. R. A. 1916A, 999; LeSieur v. Spikes, 117 Ark. 366, 175 S. W. 413; Smith v. Maberry, 148 Ark. 216, 229 S. W. 718; Sadler v. Campbell, 150 Ark. 594, 236 S. W. 588.

ported by a particular estate in possession which takes effect in possession immediately upon the determination of the prior estate, and which is created at the same time and by the same conveyance.' Tiedeman on Real Property (3rd Ed.), section 296.

"A remainder is a residue of an estate in land, depending upon a particular estate, and created together with the same. 2 Tho. Co. 126. After quoting the above definition, Professor Graves, in his notes on Real Property, section 173, commenting thereon, says: 'In order that there may be a remainder, there must be a particular estate upon which it may depend; . . . ' " [1]
The deed from Jett and wife to Mrs. Gibbs did not attempt to create a remainder in Mrs. Gibbs' based on a prior life estate to Mrs. Bates; and Mrs. Bates' claim that the deed was void certainly could not have made the relationship to be that of life tenant and remainderman, because such relationship did not arise at the time the deed was signed.

If we say that the 1894 deed signed by Jett and wife was void insofar as Mrs. Bates was concerned, then all that Jett conveyed to Mrs. Gibbs was his interest in the land subject to Mrs. Bates' dower and possibility of homestead; and we have repeatedly held that the widow, by notice, may commence the running of adverse possession in her favor against the heirs. In Brinkley v. Taylor, 111 Ark. 305, 163 S.W. 521 the widow had only a dower right, but by adverse holding she acquired the fee as against the heirs, even though they never had dower assigned to her. Even though her entry on the land is presumed to be permissive, and not in hostility to the heir until the fact of hostility is affirmatively proved, nevertheless, in that case such hostility was shown.

In Clark v. Wilson, 174 Ark. 669, 297 S.W. 1008, we reviewed a number of cases on this question as to when the holding by the widow may become adverse to the heirs; and we quoted from Watson v. Hardin, 97 Ark. 33, 132 S.W. 1002:

---

[1] See, also, 33 Am. Juris, 508, "Definitions and characteristics of a remainder."

" ' . . . . it is true that her claim and possession might have been of such a nature as to amount to an entire disseizin of the heir and an entire denial of his rights, so as to result in an acquisition of title by adverse possession; but, before her possession could become adverse, it was necessary for her to first repudiate the title (of her husband) and to disavow any claim thereto as his widow; and it was also essential that notice of such disavowal by her of title as widow should be brought home to the heir.' "

And then we continued:

"But it was there also said that the widow might acquire title by adverse possession against the heir if her disclaimer and hostile possession was so open and notorious as to raise a presumption of notice to him."

In the case at bar, certainly the allegations (hereinafter to be discussed) in the 1920 suit between these parties constituted notice to Mrs. Gibbs that Mrs. Bates was claiming the fee title by adverse possession; so the rule of the foregoing cases is applicable if the 1894 deed be void insofar as Mrs. Bates is concerned.

On the other hand, if we say that the 1894 deed signed by Jett and wife was valid insofar as Mrs. Bates was concerned, then Mrs. Bates has all these years been a grantor remaining in possession of the property; and our cases recognize that such a person can acquire a title by adverse possession against the grantee by lapse of many years and notice of hostile holding. In Davis v. Burford, 197 Ark. 965, 125 S.W. 2d 789 we reviewed the cases involving a lapse of many years. In Stuttgart v. John, 85 Ark. 520, 109 S.W. 541, we recognized that if the occupancy and use of the premises by the grantor be manifestly inconsistent with that of the grantee, and notice of the hostility of the claim is brought home to the grantee, then the statute of limitations will be set in operation in favor of the grantor and against the grantee.

So, whether the deed from Jett and wife to Mrs. Gibbs in 1894 be valid or void—in either event—it was legally possible for Mrs. Bates, by remaining in possession and by presenting notice of adverse possession to

Mrs. Gibbs, to start the running of the statute of limitations in favor of Mrs. Bates and against Mrs. Gibbs. Our opinion in Gibbs v. Bates, *supra,* was rendered in 1921 and was the culmination of the suit that Mrs. Gibbs had instituted against Mrs. Bates in 1920. In the statement of facts in that opinion we said of Mrs. Gibbs: "Her complaint further states that Nora L. Bates makes an adverse claim to the land, . . . ."

Of Mrs. Bates' possession, we said: "The defendant claimed title by adverse possession. . . . . ."

Certainly, our opinion in 1921 showed that Mrs. Bates was claiming the title by adverse possession, and the result of that case clearly indicated that Mrs. Gibbs should have proceeded at law by action in ejectment if she desired to recover the premises. Instead, she did nothing from 1921 to 1948 so far as the record here shows. Mrs. Bates remained in possession, and has now filed suit to have her title quieted. In Cunningham v. Brumback, 23 Ark. 336, this Court adopted as its own the language of Judge U. M. Rose:

"The law wisely holds that there shall come a time when even the wrongful possessor shall have peace; and that it is better that ancient wrongs should go undressed, than that ancient strife should be renewed."

Our statutes [2] and our cases [3] recognize that if a person takes possession of land and holds the same under a claim of ownership continuously, openly, adversely, etc., for more than seven years, then such person acquires a title by adverse possession and is entitled to prevail in an action to quiet title. That is the situation of Mrs. Bates in the case at bar. The Chancery Court granted her that relief, and we find the decree to be correct.

Affirmed.

GEORGE ROSE SMITH, J., dissenting. In 1894 appellant bought and paid for this land. Unfortunately for

[2] Sections 10958, *et seq.,* Pope's Digest and §§ 34-1901, *et seq.,* Ark. Stats. of 1947.

[3] Van Etten v. Daugherty, 83 Ark. 534, 103 S. W. 737; Elliott v. Pearce, 20 Ark. 508; Cofer v. Brooks, 20 Ark. 542; Pillow v. Roberts, 12 Ark. 822; Skipwith v. Martin, 50 Ark. 141; 6 S. W. 514; Hudson v. Stillwell, 80 Ark. 575, 98 S. W. 356.

her, the wife of her grantor was a minor at the time of the sale. In 1897 appellee elected to disaffirm the transaction and to retain possession under her dower and homestead rights. This possession is now declared by the majority to have ripened into title, although, as I shall endeavor to show, there has never been a time when appellant could have successfully asserted a right to possession.

I do not understand that the majority disagree with my view as to the effect of the occurrences before 1920. The appellee pleaded her minority in the 1897 action in ejectment. This was a sufficient disaffirmance. Williston on Contracts, § 231. We have held that a wife may disaffirm a release of dower executed during her minority and reassert her interest in the land. *Watson* v. *Billings,* 38 Ark. 278, 42 Am. Rep. 1. I think the same rule applies to the release of homestead in the rare cases, such as this one, in which the couple have not abandoned the homestead by termination of occupancy before the wife elects to disaffirm. Of course a husband's conveyance of the homestead is void if his wife does not join in the deed, while that is not true when she merely fails to release dower. But the conclusion reached in *Harrod* v. *Myers,* 21 Ark. 592, 76 Am. Dec. 409, in an analogous situation, is practically decisive as to the appellee's privilege of reasserting her homestead right.

Thus until 1920 the appellee's possession was by virtue of her homestead interest. (She also had unassigned dower in the land.) In the record before us, which includes by stipulation the proceedings in the earlier cases, there is nothing to indicate that before 1920 the appellee ever brought home to the appellant any notice of a claim of adverse possession. Her first assertion of an adverse holding was made in her answer in the 1920 suit, in which appellant sought to quiet her title to the land. The pivotal question in this case is whether appellee's plea of adverse possession in 1920 set the statute of limitations in motion. The majority say that in the face of that plea the appellant should have brought an action at law for possession. I am convinced that such an action would not have been successful.

In 1920 the appellee was vested with a homestead right for life; her dower interest was also a life estate, her husband's estate having been ancestral. The appellant owned the remainder. She brought suit to quiet title, the appellee interposing a plea of adverse possession. That case was not decided on the merits. It was enough to defeat equity jurisdiction for the appellee to show that she was in possession, whether adversely or not. Reference to the appellee's brief upon that appeal reveals that she was content to rely upon possession alone, regardless of its adverse character. In her brief she admitted that it was unnecessary for her to prove adverse possession, saying, "It is sufficient that appellant at the time of instituting her suit was not in possession of the property." All this court did was to agree with her contention.

In order to protect her rights it was not necessary that appellant bring a suit that she would have lost. "No one can be in default in not bringing an action which he could not have maintained, if brought." *Smith.* v. *Maberry,* 148 Ark. 216, 229 S. W. 718. Had appellant brought ejectment within seven years after the plea of adverse possession was filed, she could have prevailed only if the appellee were estopped to claim her dower and homestead rights. Although one may be estopped by having taken a certain position in earlier litigation, it is necessary either that the party shall have prevailed by reason of that position or that his opponent shall have changed his own position in reliance thereon. Neither requisite is present here. The appellee won the 1920 case not because she pleaded adverse possession but because she proved her own actual possession. She had simply pleaded more than she had to prove to win her case. Obviously appellant has not changed her own position in reliance on the plea. Thus it is clear that appellant could not have maintained ejectment as long as the appellee had her life interest. It follows that the statute has never begun to run; so the decree should be reversed.